UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELICIA CHEEKS,

    *Plaintiff*,

v.                              CASE NO. 10-CV-12047

COMMISSIONER OF           DISTRICT JUDGE DAVID M. LAWSON
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and supplemental

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

security income (SSI) benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 13, 16.)

Plaintiff was 34 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 10, 85.) Plaintiff's employment history includes work in fast food restaurants and in a pickle factory. (Tr. at 109-13.) Plaintiff last worked in 1998. (*Id.*)

Plaintiff filed the instant claim on August 5, 2005, alleging that she became unable to work on April 1, 2005. (Tr. at 85.) The claim was denied at the initial administrative stages. (Tr. at 46.) In denying Plaintiff's claims, the Defendant Commissioner considered asymptomatic HIV infection and adjustment disorder with mixed anxiety and depressed mood as possible bases of disability. (*Id.*) On April 28, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Linda S. Halperin, who considered the application for benefits *de novo*. (Tr. at 9-15.) In a decision dated July 24, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 15.) Plaintiff requested a review of this decision on August 18, 2008. (Tr. at 79-80.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on March 22, 2010, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-3.) On May 21, 2010, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to

the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon

an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence

4

without directly addressing in his written decision every piece of evidence submitted by a party");

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program (SSI) of Title XVI, 42 U.S.C. §§ 1381 *et seq.* Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

5

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.  ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since March 22, 2006, the application date. (Tr. at 11.) At step two, the ALJ found that Plaintiff's morbid obesity, sleep apnea, HIV+, and borderline intellectual functioning were "severe" within the meaning of

6

the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 12.) At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. at 14-15.) At Step Five, the ALJ found that Plaintiff retained the residual functional capacity to perform a full range of light work. (Tr. at 12-14.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 15.)

### E.   Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff fractured her left tibia and fibula in a car accident in March 1999 and underwent surgery to repair the fracture, which included placement of a "intramedullary rod." (Tr. at 289.)

Plaintiff was treated for HIV and obesity with Saqib Hasan, M.D., from 2005 through 2006. (Tr. at 146-205.) Plaintiff was taking her medication for HIV and "appeared[ed] well" at that time. (Tr. at 151.) Plaintiff had some coughing symptoms in May 2005, but x-rays did not reveal any changes and were "normal." (Tr. at 159, 162, 196, 204.)

Plaintiff was also treated by Kevin Stachowiak, MSW, MA, LLP, for adjustment disorder with mixed anxiety and depressed mood beginning in April 2006. (Tr. at 226-31.) Plaintiff reported that she had zero pain level, with zero being none, in April 2006. (Tr. at 229.) At that time, Plaintiff also reported that she had not used cocaine for six months. (*Id.*)

In July 2006, a case analysis completed by the Department of Human Services concluded that Plaintiff's physical conditions were not significant and that Plaintiff did not have any severe impairments. (Tr. at 232-33.) A psychiatric review technique completed at that same time also concluded that Plaintiff suffered from affective disorders, i.e. adjustment disorder with mixed anxiety and depressed mood, but that she did not have any severe impairments. (Tr. at 234, 237.) Plaintiff was found to be mildly limited in her activities of daily living and in maintaining

concentration, persistence, and pace but was not limited in any other areas of functioning.  (Tr. at 244.)

Plaintiff was assessed by Robert Bottinelli, Ph.D., a psychologist, in October 2007.  He found that Plaintiff was able to "present her ideas in a logical and coherent fashion," that her "[s]peech was readily understandable," and that she was "an adequate historian."  (Tr. at 252.) Plaintiff was assessed with a verbal scale IQ of 78, a performance scale IQ of 67, and a full scale IQ of 70.  (Tr. at 251.)  Those results placed Plaintiff in the second percentile.  Her "verbal and full scores are Borderline while her performance score falls within the Mentally Defective range of demonstrated intellectual functioning."  (Tr. at 251.)  Plaintiff was able to "demonstrate basic phonetic and word attack skills, [s]pelling errors were generally phonetically logical" such that the "[o]verall results suggest borderline functional literacy."  (Tr. at 251.)  Plaintiff began a three-month treatment plan in July 2006.  (Tr. at 260.)  As of October 2006, Plaintiff had made "mild progress, 20% - 49% improvement in presenting signs and symptoms."  (Tr. at 261.)  Plaintiff was provided with another treatment plan in November 2006 with a different therapist.  (Tr. at 263, 269.)  In December 2006, Plaintiff "appear[ed] less depressed."  (Tr. at 271.)

Dr. Hasan noted in January 2007 that Plaintiff "continues to do well . . . [and that] her depression has improved[, although] she admits to smoking crack about two months ago."  (Tr. at 303.)  In July 2007, Plaintiff reported to Dr. Hasan that "her depression is reasonably controlled with Paxil."  (Tr. at 306.)  In November 2007, Plaintiff reported to Dr. Hasan that her "depression has improved on Paxil [and that] she last smoked crack about a month ago."  (Tr. at  314.)

Plaintiff continued working with her therapist in 2008, made "some" progress throughout the year, and eventually made "good" progress.  (Tr. at 320-24.)

Plaintiff was diagnosed with obstructive sleep apnea in February 2008. (Tr. at 340.) Plaintiff was also diagnosed with syphilis in April 2008. (Tr. at 348.) A CT scan of Plaintiff's head performed in April 2008 was normal. (Tr. at 352.)

Plaintiff testified at the April 2008 hearing that she used crack cocaine through December 2007 but has been clean since January 2008. (Tr. at 31-33.) She is not sure but likely became HIV positive through sexual contact when she was selling herself to buy crack. (Tr. at 32.) She further testified that she does not have any current symptoms from HIV. (Tr. at 32.) Plaintiff stated that she cooks her own meals, sweeps, mops, cleans bathrooms, washes dishes, visits people, reads, goes shopping, to dinner with her boyfriend, and to church. (Tr. at 34-35, 40, 43-44, 119-21.) Plaintiff testified that she is five feet four inches tall and weighs approximately 384 pounds. (Tr. at 36.) Plaintiff states that she uses a brace for her ankle. (Tr. at 123.)

### F. Analysis and Conclusions

### 1. Legal Standards

The ALJ determined that during the time he qualified for benefits, Plaintiff possessed the residual functional capacity to perform a full range of light work. (Tr. at 12-14.)

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in her application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

**2. Substantial Evidence**

Plaintiff contends that substantial evidence fails to support the findings of the Commissioner. (Doc. 11.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff specifically contends that the ALJ did not properly evaluate her impairment of intellectual functioning, *i.e.* Listing 12.05(C) (Doc. 13 at 10-11), that the ALJ erroneously concluded that Plaintiff's past work experience indicated a continuing ability to work (*id.* at 11-12), that the ALJ did not analyze Plaintiff's substance abuse in accordance with Social Security Regulations, *i.e.* 20 C.F.R. § 416.935 (*id.* at 12-13), that the ALJ's conclusions regarding Plaintiff's sleep apnea are not supported by substantial evidence (*id.* at 13-14), and that the ALJ improperly relied on the "grids" to support the conclusion that Plaintiff could perform a full range of light work. (*Id.* at 14-15.)

The Sixth Circuit has held that in order to meet a Listed Impairment under 12.05, a Plaintiff must satisfy the diagnostic description or definition as well as the severity requirements listed in subsections (A) - (D). 20 C.F.R. § 404.1520, Subpart P, App. 1, Listing 12.05; *Foster v. Haller*, 279 F.3d 348, 354-55 (6th Cir. 2001). In the instant case, Dr. Bottinelli assessed that Plaintiff's verbal IQ was 78, performance IQ was 67, and her full scale IQ was 70. Plaintiff contends that she

meets Listing 12.05(C) for mental retardation which applies when a plaintiff has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. § 404.1520, Subpart P, App. 1, Listing 12.05(C).

The Sixth Circuit has held that IQ scores alone are insufficient to meet 12.05(C) requirements. *Blanton v. Soc. Sec. Admin.*, 118 Fed. App'x 3, 7 (6th Cir. 2004) ("two IQ scores of 70, without more, does not satisfy the requirements of Listing 12.05(C)"). In addition, a plaintiff must satisfy the following diagnostic requirements under Listing 12.05(C): "(1) subaverage intellectual functioning; (2) onset date before age twenty-two; and (3) adaptive-skills limitations." *Hayes v. Comm'r of Soc. Sec.*, 357 Fed. App'x 672, 675 (6th Cir. 2009) (citing *Foster, supra*).

Plaintiff contends that her high school grades provide sufficient support that she meets the Listing's diagnostic requirements. (Doc. 13 at 11.) The Sixth Circuit "has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two." *Hayes,* 357 Fed. App'x at 677 (citing *Foster*). I note that there is no other evidence to establish onset before age twenty-two and therefore suggest that the ALJ's conclusion that Plaintiff did not meet the Listing is supported by substantial evidence.

In addition, I suggest that there is substantial evidence to support the ALJ's decision that Plaintiff has not shown that she is so limited in adaptive skills as to meet the Listing. Adaptive skills are those social, communicative, and daily-living skills. *Heller v. Doe*, 509 U.S. 312, 329, 113 S. Ct. 2637, 125 L. Ed. 2d 257 (1993). The record evidence and Plaintiff's own testimony sustain the ALJ's conclusion because Plaintiff cooks her own meals, sweeps, mops, cleans

11

bathrooms, washes dishes, visits people, reads, goes shopping, to dinner with her boyfriend, and to church. (Tr. at 34-35, 40, 43-44, 119-21.)

I also note that although Plaintiff was evaluated as having borderline intellectual functioning (Tr. at 251), that is different from mental retardation and does not meet the Listing's requirements. *West v. Comm'r Soc. Sec. Admin.*, 240 Fed. App'x 692, 698-99 (6th Cir. 2007) (finding Listing 12.05(C) not met where evaluation "revealed only borderline intellectual functioning and adjustment disorder, not mental retardation.")

I further suggest that the ALJ's decision is supported by the Psychiatric Review Technique's conclusion that Plaintiff did not have any severe impairments (Tr. at 234, 237) and that Plaintiff was only mildly limited in her activities of daily living and in maintaining concentration, persistence, and pace, but was not limited in any other areas of functioning. (Tr. at 244.) I therefore suggest that substantial evidence supports the ALJ's finding that Plaintiff did not meet Listing 12.05.

I further suggest that the ALJ properly considered all the record evidence – including Plaintiff's substance abuse, sleep apnea, and non-exertional limitations – and that substantial evidence supports the finding that Plaintiff is not disabled. Finally, I conclude that the ALJ could properly make use of the Grids (20 C.F.R. Part 404, Subpart P, Appendix I) to satisfy the burden at Step Five of the analysis where, as here, Plaintiff's nonexertional limitations are not sufficiently severe to significantly limit the range of work permitted by her exertional limitations. *Mullins v. Sec'y of Health & Human Servs*, 836 F.2d 980, 985 (6th Cir. 1987); *Cole v. Sec'y of Health & Human* Servs., 820 F.2d 768, 771 (6th Cir. 1987); *Collins v. Comm'r of Social Security*, 357 Fed. App'x 663, 670-71 (6th Cir. 2009).

### 3.     **Conclusion**

For all these reasons, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.


### III.    <u>REVIEW</u>

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

s/ **Charles E Binder**
CHARLES E. BINDER

Dated: January 18, 2011                                     United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  January 18, 2011                                By        s/Patricia T. Morris
                                                                                Law Clerk to Magistrate Judge Binder